UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LEONARD M. HOWARD,

    *Plaintiff*,

v.

RUN HOPE WORK, INC. *et al.*,

    *Defendants.*

No. 24-cv-01371 (DLF)

## MEMORANDUM OPINION AND ORDER

Leonard M. Howard brings this action against his former employer, Run Hope Work, Inc., and two of its Board members, Hilary Cairns and Brooks Newman. He alleges that the defendants terminated him on the basis of race and tortiously retaliated against him post-termination. Before the Court is the defendants' Motion to Dismiss, Dkt. 10. For the reasons that follow, the Court will grant the motion.

**I.   BACKGROUND**[1]

Howard, a black man, was hired as the Executive Director of Run Hope Work, Inc., on June 20, 2022. Amd. Compl. ¶¶ 17–18, Dkt. 2. Run Hope is a non-profit organization dedicated to improving the lives of at-risk D.C. youth through vocational training and personal wellness programs. *Id.* ¶ 17. At all relevant times, Cairns and Newman were members of Run Hope's Board of Directors. *Id.* ¶¶ 7–8. When Howard was hired, Run Hope had "three employees on payroll at the time, including Howard." *Id.* ¶¶ 27. During his employment, Howard expanded

---

[1] In evaluating the defendant's motion to dismiss for failure to state a claim, the Court assumes that the material factual allegations in the operative complaint are true. *See Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011)

Run Hope's funding base, held multiple fundraisers, and obtained over $700,000 in grants from the District of Columbia Department of Employment Services ("DOES") and Department of Youth and Rehabilitative Services ("DYRS"). *Id.* ¶¶ 38–53. Howard assumed the role of program manager for the DOES and DYRS grants. *Id.* ¶¶ 69, 74. He was compensated for his management responsibilities, in the amount of $5,000 per month from the DOES grant and $450 per month from the DYRS grant. *Id.* ¶ 75. Howard submitted the budgets for the grants—including the proposed compensation for himself and other Run Hope employees—to the Board for approval in January 2023. *Id.* ¶¶ 76–77, 79. According to Howard, he "understood that both budgets were approved" because Newman authorized the payroll that paid Howard and other employees under the grants. *Id.* ¶ 102. Howard received payments under both grants from May through October of 2023. *Id.* ¶ 103.

In September of 2023, Newman reached out to Howard with questions about "some expenses . . . that we are unable to explain." *Id.* ¶ 125. On September 27, Newman, Cairns, and Howard met to discuss the budgets and Howard's compensation under the DOES and DYRS grants. *Id*. ¶¶ 126–127. At the close of the meeting, Newman told Howard that "an internal audit would be performed." *Id*. ¶ 139. In October of 2023, Cairns accused Howard of "offering and paying kickbacks to DOES and DYRS leadership in exchange for getting the grants approved." *Id.* ¶ 144. At the close of the audit, according to Howard, the Board "found no wrongdoing on Mr. Howard's part." *Id.* ¶ 149. Howard further alleges that he "did not violate any bylaws or any established board policy or custom by compensating himself or [Run Hope] staff under the DOES or DYRS grants." *Id.* ¶ 150. According to Howard, Cairns falsely accused him of not "hav[ing] board approval to authorize payments to himself and [Run Hope] staff," *id.* ¶ 151 (internal

2

quotation marks omitted), even though Newman had "authorized payroll with payments to [Howard]" under the grants, *id.* ¶ 135.

On November 17, 2023, Newman and Cairns fired Howard. *Id.* ¶¶ 153. According to Howard, prior to his termination, "certain Board members contacted him and told him that [Newman and Cairns] were trying to fire him," and that "it was unlawful and racist and suggested that [Howard] hire counsel." *Id.* ¶ 159. Howard further alleges that Cairns was "demonizing him" in Board meetings, *id.* ¶ 160; that she has been "instrumental in terminating . . . every Black male director [Run Hope] has ever had," *id.* ¶ 116; and that her "modus operandi has been to level (false) accusations around fiduciary responsibility to cover the Board's (and her) incompetence or to question the business judgment of Black directors to cloak her racist intentions," *id.* ¶ 117.

In February 2024, Howard was offered a position as Executive Director of another non-profit organization called Youth Guidance. *Id.* ¶ 169. But on March 4, 2024, Youth Guidance rescinded his employment offer without warning. *Id.* ¶ 175. Howard alleges that "it is believed that [the defendants] informed Youth Guidance that Howard was engaged in financial improprieties by 'paying himself' under the DOES and DYRS grants without proper approval." *Id.* ¶ 177. He asserts that these purported statements were "patently false" and "interfered with [his] employment opportunity." *Id.* ¶¶ 178–179.

Howard filed the instant action on May 10, 2024. He alleges one count under federal law—race discrimination and unlawful termination under Title VII of the Civil Rights Act (Count I). He alleges five additional counts under D.C. law—unlawful termination based on race under the D.C. Human Rights Act (Count II); retaliation under the D.C. Human Rights Act (Count III); tortious interference under D.C. common law (Count IV); defamation under D.C. common law (Count V);

and false light under D.C. common law (Count VI).[2] *Id*. at 22–27. The defendants move to dismiss the complaint in full. Mot. to Dismiss, Dkt. 10.

## II.   LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss the complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This standard does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Well-pleaded factual allegations are "entitled to [an] assumption of truth," *id.* at 679, and the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged," *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted). The assumption of truth does not apply, however, to a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

---

[2] Howard has voluntarily agreed to dismiss without prejudice his false light claim. Opp'n at 19, Dkt. 16.

### III.  ANALYSIS

#### A.  Race Discrimination / Unlawful Termination under Title VII

The defendants move to dismiss Count I, the federal race discrimination claim, because Run Hope is not an "employer" subject to liability under Title VII. Mot. to Dismiss at 4–5. An "employer" under Title VII is defined as a person with "fifteen or more employees for each working day in each of twenty or more calendar weeks." 42 U.S.C. § 2000e(b). "[T]he threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief." *Barot v. Embassy of Republic of Zambia*, 299 F. Supp. 3d 160, 172 (D.D.C. 2018) (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515 (2006)). Howard's complaint asserts that when he was hired, Run Hope had only "three employees on payroll at the time, including Howard." Amd. Compl. ¶ 27. Howard does not allege that the Run Hope employed other individuals that might qualify as statutory employees, nor does he assert that additional staff were hired over the course of his employment. *See generally* Amd. Compl. Howard also entirely fails to respond to this argument in his opposition. *See generally* Opp'n. Because Howard fails to allege the defendants had the requisite fifteen employees necessary to be subject to liability under Title VII, the Court will grant the defendants' motion to dismiss Count I.

#### B.  State Law Claims

Because the Court will dismiss Howard's only federal law claim, the Court must determine whether it will continue to exercise supplemental jurisdiction over Howard's remaining state law claims.[3] When a court dismisses all federal claims in a suit, it has the discretion under 28 U.S.C.

---

[3] The Court lacks diversity jurisdiction because Howard, Run Hope, and Cairns are all residents of the District of Columbia. Amd. Compl. ¶¶ 4, 14, 15; *see* 28 U.S.C. § 1332(a); *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991) (describing the "well-established rule that diversity of citizenship is assessed at the time the action is filed").

§ 1367(a) to exercise—or decline to exercise—supplemental jurisdiction over any remaining state law claims. *See* 28 U.S.C. § 1367(c)(3); *Trimble v. District of Columbia*, 779 F. Supp. 2d 54, 60 (D.D.C. 2011) (dismissing all federal claims and declining to exercise supplemental jurisdiction over remaining state-law claims). In exercising this discretion, courts consider "judicial economy, convenience and fairness to litigants." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *see also Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1266–67 (D.C. Cir. 1995).

The relevant factors weigh against retaining Howard's state-law claims. To start, this "case has not progressed beyond defendants' first motion, and the Court has not developed any familiarity with [Howard]'s state-law claims." *Deppner v. Spectrum Health Care Res., Inc.*, 325 F. Supp. 3d 176, 191 (D.D.C. 2018). Moreover, Howard "will not be prejudiced in any way by dismissal," *id.*, because he is not time-barred from filing any of his claims in state court. The supplemental jurisdiction statute, 28 U.S.C. § 1367(d), not only provides for a thirty-day grace period for refiling in state court after dismissal but also stops the clock on any otherwise-applicable limitations period during the pendency of the federal suit. *See Artis v. District of Columbia*, 583 U.S. 71, 74–75 (2018). Because the Court declines to exercise supplemental jurisdiction over Howard's state law claims, it will dismiss without prejudice Counts II, III, IV and V for lack of subject matter jurisdiction.

## CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the defendants' Motion to Dismiss, Dkt. 10, is **GRANTED**. The plaintiff's Amended Complaint, Dkt. 2, is **DISMISSED WITHOUT PREJUDICE.**

This is a final appealable Order. The Clerk of Court is directed to close this case.

**SO ORDERED**

_____
DABNEY L. FRIEDRICH
United States District Judge

November 19, 2024